(Decided February 14th, 1867.)

---

JOSEPH T. GOUGH and ELIZABETH A. GOUGH, his wife, *vs.* IDA CAROLINE MANNING, by her next friend, JOSEPH EDWIN COAD.

DEVISE IN RESTRAINT OF MARRIAGE WITH LIMITATION OVER: CONDITION PRECEDENT.—If either real or personal estate be devised upon a condition precedent to the vesting of the estate, coupled with a devise over upon breach of the condition, the devise or bequest is good and the restraint effectual to defeat the estate.

If the estate be real, the condition precedent in restraint of marriage will be good, whether there be a devise over or not, and whether the restraint be general or qualified.

If the estate be personal, the condition precedent, in general restraint of marriage, will be void if there be no limitation over, but if there be a limitation over it will be good.

———: CONDITION SUBSEQUENT.—If a condition subsequent be in general restraint of marriage, and there is no limitation over, it is void as to both real and personal estate.

If the condition subsequent be in general restraint of marriage, and there is a limitation over, it is void as to the personal estate, but as to real estate, the cases are in conflict. The later and better opinion, however, seems to be, that even in that case the limitation over should not prevail.

Gough & Wife *vs.* Manning.

If the condition subsequent be in limited and qualified restraint of marriage, it will be good, provided it be accompanied by a limitation over. If there is no limitation over, it will be construed as *in terrorem*, and not as an imperative condition.

WILL,—CONSTRUCTION OF: DEVISE IN RESTRAINT OF MARRIAGE WITH LIMITATION OVER: JURISDICTION IN EQUITY: EJECTMENT: ACCOUNT OF RENTS AND PROFITS: DEVISE IN BAR OF DOWER.—A testator devised by his will all his estate, real and personal, in fee, to his widow, with a limitation over of the whole to his daughter in case she survived the mother, and with a further conditional limitation over of the whole estate to the daughter upon the contingency of the widow's second marriage. The widow having enjoyed possession of the property devised for more than five years without having renounced, married a second time, and a bill was filed by the daughter, through her next friend, for an account of all the property of her father, after the payment of debts &c., and to obtain a true interpretation of the will.—HELD :

1st. That upon a true construction of the will, the limitation over to the daughter, upon the contingency of the widow's marriage, is valid, and upon such marriage the property became hers.

2nd. That there is no jurisdiction in a Court of Equity to surrender to the daughter the lands of the testator; to obtain possession of them, she must be remitted to the action of ejectment.

3rd. That for an account of rents and profits, and also an account for and surrender of the personal property, the jurisdiction may be maintained.

4th. That the devise over, in this case, makes the primary bequest or devise valid, because it shows the intent of the testator to make further testamentary dispositions in the event of the first devisee marrying again ; and in furtherance of that intent, in regard for the ulterior disposition in favor of the substituted devisee the law gives it effect; this intent is not less obvious when the devisee stands in such relation to the testator that he or she comes in by a superior title, notwithstanding the devise, than when the ultimate devise is to a stranger.

5th. That no one can take by the superior title, but the next of kin or heirs-at-law of the testator and if the rule of law alluded to operated to avoid the limitation over to all intents and purposes, the power of devising to a widow during her widowhood, with a devise over in favor of the children or next of kin of the testator would be measurably, if not entirely, taken away.

6th. That under the testamentary system of this State, every devise, (unless in effect nothing shall pass by such devise,) is construed as intended in bar of dower, and so operates, if the devisee within the time specified by law does not renounce all benefit under the will.

7th. That where, as in the present case, five years elapsed between the death of the testator and the second marriage of his widow, and no renunciation is set up or relied on, but all the circumstances conflict with the presumption of its existence, and show that she claimed the fee-simple under the will, insisting that the *conditions* of the devise were void, she cannot now claim in opposition to the will, *"qui sentit commodum debet sentire et onus."*

Gough & Wife *vs.* Manning.

JURISDICTION IN EQUITY.—Under the provisions of the Code, Art. 5, "No defendant to a suit in equity, in which an appeal may be taken, shall make any objection to the jurisdiction of the Court below, unless it shall appear by the record that such objection was made in said Court."

———: FORFEITURE.—The general rule, that equity never enforces a forfeiture, has never been applied to cases of conditional limitations, such as the present, where the question is, whether the proviso operates as a condition subsequent, divesting the prior estate, or as a limitation over.

The rule applies only to penalties and forfeitures absolute and certain, upon failure to do some act to be performed, or the performance of some act prohibited, or the occurrence of some event over which the defendant had no control.

APPEAL from the Circuit Court for St. Mary's county.

James H. C. Manning, by his will dated the 2nd of February, 1854, devised as follows :

"2nd. My funeral and other expenses being paid, I will and bequeath to my beloved wife, Elizabeth A. Manning, all that I now possess or may possess at the hour of my death. All my landed property, money, negroes or whatever else I now possess, or may hereafter possess."

"Provided, my said wife, Elizabeth A. Manning, will never marry or give herself in marriage to any man after my death. In case my said wife, Elizabeth A. Manning, should not comply with the above condition, that is, of not marrying after my death, or if she should marry another man, then I will and bequeath all I now possess of landed property, moneys, negroes or all I may possess at the hour of my death, to my beloved daughter, Ida Caroline Manning. In case my beloved wife, Elizabeth A. Manning, should die before my daughter, Ida Caroline Manning, I then will and bequeath all my property to my daughter, Ida Caroline Manning."

The testator died in 1855, and in October, 1861, the widow was again married to Joseph T. Gough, the appellant. The bill of complaint in this case was filed by the daughter, being a minor, by her next friend, seeking to obtain possession of the property, real and personal, so devised,

praying for an account of the personalty and of the rents and profits of the real estate, and that the Court "may declare what is the true construction of said will in relation to said property, and that your complainant may have such other and further relief as her case may require."

The widow did not renounce the will, but entered into possession of the property devised, and used and enjoyed the same from the death of the testator.   In the joint answer of the widow and her second husband, Joseph T. Gough, they say, that "they admit all the facts stated in the bill of complaint, but that they are advised and insist, that by the true construction of the said will of James H. C. Manning, the property devised still remains in fee in your respondent, Elizabeth A., notwithstanding her marrige with said Joseph T., and that the devise over in the event of her marriage is void."

The answer continues :

"Your respondents further insist, that if the limitation over is not void, that in any event your respondent, Elizabeth, is entitled to her dower in both the real and personal property of said James H. C.

"Your respondent, Elizabeth, is willing and humbly submits the true construction of said will to this honorable Court, and prays that all the rights of the parties to this suit may be adjudicated and determined by said Court, and that your honor may pass such decree as may be according to the respective rights of the parties."

The Court below, (BRENT, J.,) decreed, "that the defendants account with the complainant in reference to the personal estate in the proceedings mentioned, and for the rents and profits arising from the real estate," &c., and filed the following opinion :

"This case arising out of the will of James H. C. Manning, of St. Mary's county, has been submitted to the Court upon bill and answer, and I have endeavored to

examine with great care the very interesting question of law which it presents.

"The devise in the will is of all the estate of the testator, real and personal, in fee to the widow, with a limitation over of the whole to the daughter, in case she survives the mother, and with a further conditional limitation over of the whole estate to the daughter upon the contingency of the widow's second marriage.

"The widow having married Joseph T. Gough, this bill has been filed by the daughter, through her next friend, she being a minor, for an account of all the property of James H. C. Manning, her father, which remained after the payment of debts and administration expenses, and to declare the true interpretation of the will.

"A great deal of fluctuation has occurred in the progress of judicial decisions upon the subject of conditions and limitations in restraint of marriage, both as regards real and personal estate. To attempt an analysis of all the cases would be vain, nor is it required in the case now under consideration. This much however may be asserted as in harmony with the authorities.

"If either real or personal estate be devised upon a condition precedent to the vesting of the estate, coupled with a devise over upon breach of the condition, the devise or bequest is good, and the restraint effectual to defeat the estate.

"If the estate be real, the condition precedent in restraint of marriage will be good, whether there be a devise over or not, and whether the restraint be general or qualified.

"If the estate be personal, the condition precedent, in general restraint of marriage, will be void if there be no limitation over, but if there be a limitation over it will be good.

"In regard to conditions subsequent:

"If they be in general restraint of marriage, and there is

no limitation over, they are void as to both real and personal estate.

"If in general restraint of marriage, and there is a limitation over, they are void as to personal estate. But as to real estate the cases are in conflict. The later and better opinion, however, seems to be, that even in that case the limitation over should not prevail. If the condition subsequent be in limited and qualified restraint of marriage, it will be good, provided it be accompanied by a limitation over. If there is no limitation over, it will be construed as *in terrorem* only, and not an imperative condition. To this last class belong the two cases to be found in 8 *Md. Rep.*, 517, and 9 *Md. Rep.*, 291.

"The inquiry arising in the present case is, whether the restriction by a husband upon the second marriage of his wife, accompanied by a devise over in favor of the children of the first marriage, is a condition which will be upheld by the Courts as a limited and qualified restraint upon marriage. I think, in view of the authorities, both English and American, and the civil law to which they all confessedly refer as their source, there can be no doubt that the limitation over is good. The cases of *Waters vs. Tazewell*, and *Binnerman vs. Weaver*, in 8 & 9 *Md. Reps.*, were both cases of personal property without limitation over, and have therefore no circumstances in them which bear at all upon this question.

The text books, 2 *Cruise*, 26 *Story*, secs. 285, 287, 288 and 289, *Ward on Legacies*, 150, all admit, that a condition by a husband in restraint of the second marriage of the wife is good. The leading English case of *Scott vs. Tyler*, recognizes in the fullest manner the doctrine; and what Lord THURLOW there lays down has never been controverted by any judge or text writer in England, so far at least as I have been able to extend my examination. At page 172, (marginal,) of 2 *Hare & Wallace*, he quotes

the *Novels*, 22*nd*, *ch*. 44, to show that by the civil law in the time of Justinian, it had become lawful for a husband to impose restrictions upon the second marriage of his wife, and that the rule of the civil law was the rule of the canon law, and as such the rule of the law of England. The doctrine of Lord THURLOW was re-affirmed in 1795, by the Lord Chancellor of Ireland, in *Keily vs. Monk*, 3 *Ridgaway's Parliament Cases*, at page 245, as follows: 'The branch of the *lex Julia* which made void conditions prohibiting marriage annexed to a legacy, mentions only such as prohibited marriage altogether, and extended equally to widows and maidens. But in respect to widows it was soon dispensed with, and therefore, if a man gave a legacy to his wife on condition that if she married it should go to another, the law says: *'Non dubium est quin si nupserit cogenda est restitutio?'* *Gains' Dig. Lib.*, 32, *Tit.*, 3, *L.* 14. Although such a condition is void *'si mulieri legatur.'* So *Godolphin*, 3*rd part*, *ch*. 17, *sec*. 9. 'Such a legacy given to a virgin is void, but the civil or rather the canon law allows it in a legacy given to a widow, especially by husband to his wife, or by a son to his mother.' So in *Morley vs. Rennoldson*, 2 *Hare*, 580, decided in 1843, after the ablest argument the Vice Chancellor said : 'I am satisfied from an examination of the authorities, that there is no reason to change my opinion that a gift until marriage, and when the party marries then over, is a valid limitation. In the case of a widow, there is no question of the validity of such a limitation.'

"The same doctrine is recognized in *Grace vs. Webb*, decided in 1846, 15 *Simons*, 388. 'A man may make a provision for his wife and declare it shall cease on her second marriage, because it is considered that a husband has a sort of interest to preserve the viduity of his widow for the sake of his children.' To the same effect is the case of *Lloyd vs. Lloyd*, 2 *Simons*, new series, decided in 1852.

This case is particularly strong in its bearing upon the present one. There was in the same sentence a bequest to the testators' widow and to another woman with the like devise over to the survivor in case either married. It was there held, 'that it was the intention of the testator, that if his widow or M. M. Lockley should marry, the whole annuity should go to the survivor. Now with regard to that which is an apparent condition subsequent annexed to the estate of a tenant for life, by the rule of law it is void as to M. M. Lockley, but according to the authorities, such a condition is not void as to the wife, the law recognizing in a husband such an interest in his wife's widowhood, as to make it lawful for him to restrain her from making a second marriage, by imposing a condition that on such marriage any provision he may have made for her shall cease. And with regard to either his wife or to any other woman, a testator may make a gift so long as she shall remain single, but if he first gives a life estate to a single woman, a stranger to him, and then annexes a condition that in case she marries at all it shall go over, that being in general restraint of marriage, is not a good condition.'

"Thus it appears that the highest English authorities coming down as late as 1852, have without dissent recognized the doctrine that a husband has the right to restrict the marriage of his wife by a bequest or devise over. This principle has been engrafted into the English law upon the authority of the Novels and the Digest quoted above, and has been established as the rule in cases where the bequests or devises over were in favor of strangers in blood.

"Now where the children of the marriage, as in this case, are concerned, and the limitation over is in their favor, they having by the terms of the will no property except as dependent upon the surviving parent, I do not think any Court will hesitate about giving efficacy to the limitation over in their favor. Their claims are most for-

Gough & Wife *vs.* Manning.

ably stated in 10 *Barr*, 348, and, also, in 7 *Conn. Reps.*, 568, and 10 *Humphreys' Tenn. Reps.*, 31. These American authorities are emphatic in recognizing the right of the husband to make such a limitation in favor of the offspring of the first marriage.

"The reasoning of C. J. GIBSON in 10 *Barr.*, is clear and forcible, and the law as there laid down and expounded by him, I think, is undoubted.

"By a recurrence to the civil law, it will be found that the interests of children by a former marriage are most favorably regarded when a surviving parent contracts a second marriage. *Domat's Civil Law, vol.* 2, *sections* 3425, 3427 and 3428.

"This authority in connection with the Novels 22, ch. 44, as quoted in *Scott vs. Tyler*, leaves no doubt as to what would be the decision under the civil and canon law on such a case as the one now in judgment. Considering, then, that the whole doctrine of conditions in restraint of marriage has been introduced into the common law through the civil and canon law, as declared by Lord THURLOW, STORY and others, and that it has never gone beyond the civil law in rejecting such conditions, it is not too much to say, that there is no warrant in the common law for disregarding those restraints and conditions which the civil law would enforce.

"I am, therefore, upon every view which I have taken in the examination of this case, clearly of opinion, that upon a true construction of the will in question, the limitation over to the daughter upon the contingency of the widow's marriage, is valid, and upon such marriage the property became hers.

"In this case I do not think there is any jurisdiction in this Court to surrender to the daughter the lands devised. To obtain possession of them she must be remitted to the action of ejectment, under the ruling of the law by this

Court, which would be applicable to the case, upon the construction of the whole will as called for by the parties.

"As to the account for rent and profits, and, also, the account for and surrender of the personal property, the jurisdiction may be maintained, and I will pass an order accordingly.

"Under the circumstances, I will not decree costs against the defendants, but will direct the parties to pay their own costs respectively."

From the decree passed in conformity with this opinion, the defendants below appealed.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH, and WEISEL, J.

*F. Stone* and *Thos. G. Pratt*, for the appellant, argued :

1st. That a Court of Equity will relieve against forfeitures, but that it is a universal rule, that equity will never enforce a forfeiture. 2 *Story's Eq. Jur.*, sec. 1891. 4 *Johns. Ch. R.*, 431. 1 *Peters*, 232, 236. 2 *Md. Ch. Dec.*, 510. *Lomax Digest, vol.* 1, *page* 359.

2nd. If a condition in restraint of marriage is general, and also subsequent, then the condition is altogether void, and the party retains the property discharged of the condition. In the case presented by this record, the condition is general and subsequent, and therefore void. *Morley vs. Rennoldson,* 2 *Hare,* 579, 570. *White & Tudor's Leading Cases, vol.* 2, *part* 1*st, page* 315, 319. *Reily vs. Marck,* 1 *Ridgaway P. C.,* 263. *Malcolm vs. O'Callahan,* 2 *Madd.,* 349.

3rd. The general doctrine submitted in the last point is not denied, but it is contended on the other side, that although such a condition would be void in other cases, that it is good here because the devise is to a widow. This doctrine may be supported by English authorities, but we

submit that it is not the law of Maryland. *Waters vs. Tazewell,* 9 *Md. Rep.,* 292, 300. *Binnerman vs. Weaver,* 8 *Md. Rep.,* 517, 524.

The true rule should be, that the condition should be held binding where it is not illegal; where it is illegal, the condition should be rejected and the devise absolute. *Stackpole vs. Beaumont,* 3 *Vesey,* 96, 38.

The doctrine of devises over has no application to cases where the condition is illegal. It is illegal and void because against the policy of the law, and it is impossible to conceive that a devise over could alter, the policy of the law, or make legal that which the law prohibits.

The truth is, that this doctrine of devises over is applicable to conditions in partial restraint of marriage, and not to cases where marriage is absolutely and forever prohibited.

4th. The proposition presented by this record, "that a condition which absolutely prohibits a widow from marrying is legal where there is a devise over upon breach of the condition," has not been directly settled in Maryland, and this Court has the high privilege of settling this interesting question upon principle. Upon this subject, in England, Lord LOUGHBOROUGH said: "The authorities stand so well ranged that the Court would not appear to act too boldly, whichever side of the proposition they should adopt." 3 *Ves.,* 98.

The grounds upon which conditions prohibiting marriage are held void, are chiefly, 1st. That it violates the first command of the Creator to man, "increase and multiply." 2nd. Because it causes unhappiness by putting interest in conflict with inclination, or causes the attempt to reconcile both at the expense of morality. Would not the first of these reasons apply equally to a young and healthy widow as to one who had never been married? Would not the conflict of interest and inclination, and the consequent incentive to immorality, be greater with the widow than the

woman of the same age and health who had never married? The judge, in 3 *Ves.*, accounts for the conflict of decision upon the subject of such conditions by saying of the judges, "they never reasoned, but only looked into the books and transferred the rule, without weighing the circumstances as positive rules to guide them."

Why should a husband be permitted to throw this temptation in the path of his wife, which a parent cannot cast upon his unmarried daughter.? *Fonblanque Equity*, 260. *Fonblanque Eq.*, *Book* 1, *ch.* 4, *sec.* 10, *note.* *Parsons vs. Winslow*, 6 *Mass.*, 169, 178. 3 *Ridgaway P. C.*, 205, 244, 247, 261. 1 *Chitty's ( E.) Digest, title Marriage,* (w.) 1 *Cruise Digest, vol.* 1, "*Estate on Condition*," 24. *Id.*, 20.

5th. That if wrong in our position that a condition prohibiting marriage is void, even where a widow is the devisee, the condition is clearly void unless there is a devise over of the estate, and we insist that there is no devise over in this case.

Our proposition is, that where a thing is given to a person to whom the law gives it, it is as if it had not been given; a devise of a man's land to his heirs is void. 1 *Bacon's Abridgement*, 522, *title Wills, F., sec.* 11. 3 *Lomax Digest*, 3, *vol.* 176. *Parsons vs. Winslow*, 6 *Mass. Rep.*, 178, 181. *Cage vs. Russell*, 2 *Ventris R.*, 352. *Phillips vs. Dashiells' Lessee*, 1 *H. & J.*, 478. *Medley vs. Williams*, 7 *G. & J.*, 62. *Gilpin et al. vs. Hollingsworth*, 3 *Md. Rep.*, 190.

Suppose a devise to a wife for life, but if she should marry again then the said devise to be void; such a condition would clearly be void, because no devise over. In this case the daughter (the only child) would take as heir-at-law precisely the same estate which they propose to give her by their construction of this will, and consequently there is no devise over.

The reason why a devise over to another devisee has been

held to make good a condition otherwise void, is that Courts have held themselves bound to protect the interest of the third party in whose favor the ulterior limitation is made. But where the bequest over is to the executor, or the devise over is to the heir-at-law of the testator, there is no third party to be protected, there is legally no bequest or devise over.

6th. That if the doctrine of limitations over apply to this case, that the devise over in this case, will be considered as *in terrorem*, and, therefore, ineffectual. *Long vs. Dennis*, 4 *Burrough's R.*, 2055. *Doe vs. Freeman*, 1 *Durnford & East*, 392.

The last clause of this will gives to the wife a fee, contingent upon her surviving the daughter, and the devise over is to the daughter only in the event of her surviving her mother.

Our construction of this will is, that the first clause gave the wife a fee, that the subsequent condition that she should not marry, and "in case my wife should marry, then I will and bequeath to my daughter," is a devise to the daughter, but without express direction of the time at which the devise is to take effect. And we insist, that whatever might be the construction if the last clause of the will had not been inserted, that this last clause expressly makes the devise over to the daughter to take effect upon the death of the wife in the lifetime of the daughter.

The cases above referred to, and the case in 9 *Md. Rep.*, 309, demonstrate that such conditions are not favored by the Courts, and that every possible construction will be given to defeat their operation. Words will not be interpolated in order to make such conditions valid. We insist, that this last clause of the will cannot be interpreted otherwise than as giving the property to the daughter upon her survivorship of the mother, without interpolating after the words, Ida C. Manning, where it first occurs in that clause, the word "unmarried."

7th. If we are wrong in all the propositions submitted, we shall insist, that the appellant is at least entitled to dower in the lands of which her husband died seized. The appellee has elected to proceed in equity, and will be compelled to do equity.

*Thos. S. Alexander* for the appellee.

The appellee insists in support of the decree in this cause:

1. That by the second marriage of the appellant, Elizabeth, her interest in the estate, real and personal, of the testator determined, and said estate became vested in the appellee, to whom it was limited over in that event.

It has at all times been conceded, that a testator may limit his estate to his widow, *durante viduitate.* And from the time of *Scott vs. Tyler,* it has been considered, that a devise or bequest to a widow, on condition that she remained a widow, was valid. The only question has been, whether in order to render the forfeiture effectual, it was not requisite that the estate should be limited over to another?

Now we have here a gift of the entire estate to the widow, with the limitation over to the infant daughter of the testator, in the event of the second marriage of the widow. So long as the latter remains a widow, her daughter is to be dependent on her for nurture and subsistence. In the event of a second marriage, which must distract, and may alienate the mother's affections, and reduce her daughter to a state of orphanage, the devise to the widow is to terminate, and the father's estate is to vest exclusively in the daughter. 2 *Leading Cases in Equity,* 341. *Scott vs. Tyler,* and the cases there cited, and especially as the more recent—*Grair vs. Weeble,* 15 *Sim.,* 284. *Lloyd vs. Lloyd,* 2 *Sim. N. S.,* 255. In Maryland, it is assumed that the law is thus settled, as in *Binnerman vs.*

*Weaver,* 8 *Md. Rep.,* 517. *Waters vs. Tazewell,* 9 *Md. Rep.,* 291.

2. The provision made by the will for the widow, was accepted by her in lieu of her dower and thirds, and as the forfeiture is the consequence of her own act, her rights as widow are not thereby revived.

Bowie, C. J., delivered the opinion of this Court.

This case was carefully considered in the Court below where an elaborate opinion was filed with the decree appealed from, to which we might properly refer for the law without further comment, but for the presentation of some points that have been urged in this Court, and do not appear to have been decided.

Among these, it is insisted, the complainant's bill being framed on the theory that the estate devised to the widow, has been forfeited by her marriage, the parties should be left to their legal remedy, since Courts of Equity never aid in enforcing a forfeiture.

This objection, if intended as a plea to the jurisdiction, could only be entertained if it had been first made in the Court below, as the 5th Article of the Code enacts, "no defendant to a suit in equity, in which an appeal may be taken, shall make any objection to the jurisdiction of the Court below, unless it shall appear by such record that such objection was made in said Court." Instead of objecting to the jurisdiction in the Court below, the respondents, in their answers, concur in the prayer of the bill, that a true construction might be given to the will and the rights of the parties adjudicated.

The general rule, that equity never enforces a forfeiture, has never been applied to cases of conditional limitations, such as the present, where the question is, whether the proviso operates as a condition subsequent divesting the prior estate, or as a limitation over.

It applies to penalties and forfeitures, absolute and certain, upon failure to do some act to be performed, or the performance of some act prohibited, or the occurrence of some event over which the defendant had no control. Such were the cases in 4 *John. Ch. Rep.*, 431, and 2 *Md. Ch. Dec.*, 510.

If, according to the true construction of the will, the appellee is entitled to the personal and real estate in question, she is entitled to an account of the assetts and rents and profits, and the parties having submitted their rights to the Court below, they cannot be heard now to object to the jurisdiction of the Court in that respect.

Whether an account for rents and profits of real estate would lie before a recovery at law, is not so clear. Mr. FONBLANQUE asserts, that Courts of Equity will sometimes decree it where the party has not already established his right at law. 1 *Story's Eq. Jur.*, 509. The Court below, in this case, considered the question of title exclusively, as auxiliary to the complainant's right to an account of the personal estate and for the rents and profits of the real estate; the judge distinctly disclaimed any jurisdiction over the possession of the land, remitting the complainant to the Courts of Law for relief in that particular. The leading authorities upon devises with conditions in restraint of marriage, are cited and reviewed by the Court below, and in our opinion correctly applied.

The appellants contend, that however settled the doctrine may be in England, a devise to a widow "*durante viduitate*" is not established by the decisions in this State; for which they rely on 8 *Md. Rep.*, 517, 524. 9 *Md. Rep.*, 292, 309. Our deduction from those cases is directly the reverse of that of the appellants.

In the first of those cases, *Bannerman vs. Weaver*, 8 *Md. Rep.*, 517, the bequest was of personal property without any express limitation over to the children. The Court

thought it doubtful whether the limitation to other administrators and guardians was not intended only in case she should depart this life or should get permanently diseased, and as no intent in behalf of the children was expressed, the Court held none was implied, and the condition in restraint of marriage was, under those circumstances, regarded as against the policy of the law. Speaking of the doubtful intent, the language of the Court is: "But be this as it may, it is clear, that the bequest to the wife, *during life, without a bequest over in the event of marriage,* is not such a bequest as will defeat the life estate, it being against the policy of the law and in restraint of marriage."

In the case of *Waters vs. Tazewell,* this Court said : "Although the use to the husband for life is followed by a proviso or condition that he should remain unmarried, yet the gift over is not upon his marriage, but "from and immediately after his decease." It is not in terms a gift over based upon the event of a second marriage. If allowed to limit or reduce the life estate, it will be giving "effect to a provision in reference to personal property, imposing not a *partial*, but a *general* restraint upon marriage by means not of a precedent, but of a subsequent condition, in the absence of any limitation over on a failure to comply with the condition."

These extracts sufficiently show the exception of limitation over, in the event of marriage, was well known and recognized.

The validity of a devise of real estate during widowhood, with a devise over to children in the event of marriage, was directly decided by the General Court in 1791, in the case of *O' Neal vs. Ward*, 3 *H. & McH.*, 93.

The devise was as follows : "I give and bequeath to my wife, during her widowhood, all my lands, but in case she should marry, my desire is, that she take one-third only, and after her decease, I give all my land to be equally

divided between my three sons; and in case any or either of them die without a will or heirs of their bodies, to be equally divided between the survivors. As to the rest or remaining part of my estate that is not willed, my desire is, that first, my wife take one-third in what she likes and the other two-thirds to be equally divided among my children.''

The general Court were of opinion, ''that by the will, the wife of Joseph Ward took an estate for life in all the lands during her widowhood, and on that event (her marriage) she took one-third for life. On her death, his three sons took an estate of inheritance in all the lands. On her marriage, the two-thirds passed, by the residuary clause in the will of Joseph Ward, to her and his children during her life.''

It will be observed, there was in this case no express devise over upon the event of the marriage of the widow, but a declaration that in that case, she should take one-third only. The specific devises over were ''after her decease.'' The residuary clause of the will was made to pass two-thirds of the estate, between the marriage and death of the widow, to her and his children during life.

*O'Neal vs. Ward,* was decided only three years after *Scott vs. Tyler,* before Lord Chancellor THURLOW, which has been a leading case in England and America ever since. In that the Lord Chancellor said, ''the rule of the civil law in restraint of marriage has suffered much limitation in descending to us. The case of widowhood is altogether excepted by the *Novels,* and injunctions to keep that state are made lawful conditions.''

This was predicated of personal legacies. ''Lands devised, charges upon it, powers to be exercised over it, money legacies, referring to such charges, money to be laid out in lands, follow the rule of the common law.'' 2 *Leading Cases in Equity,* 155, *in mar.*

As to these, the principle of the common law is thus laid down by *Coke* and *Cruise*: "If an estate be given to a woman '*dum sola fuerit*' or *durante viduitate*,' the grantees have an estate for life determinable upon the happening of these events. 1 *Just.*, 42, (*a.*) *Cruise Dig., Tit. Estate for Life, ch.* 1, *sec.* 8.

It is too late to inquire whether the reasons upon which restraints upon marriage are deemed contrary to public policy, do not apply as well to widows, as to women who have never married. The general recognition of the exception, shows it is founded in public convenience, as well as adapted to the circumstances of individuals.

The appellants further insist, that if a devise during widowhood, with a limitation over to children, is valid, yet in this case, there is no devise over, notwithstanding the language of the will, since by operation of law, where the devise would take the same estate as the laws of descent or distribution casts upon her, she is in by the latter as the superior title.

This argument, although ingenious, is not conclusive. The devise over, makes the primary bequest or devise valid, because it shows the intent of the testator to make further testamentary dispositions in the event of the first devisee's marrying again; and in furtherance of that intent, in regard for the ulterior disposition in favor of the substituted devisee, the law gives it effect. This intent is not less obvious, when the devisee stands in such relation to the testator, that he or she comes in by a superior title notwithstanding the devise, than when the ultimate devise is to a stranger.

None can take by the superior title but his next of kin or heirs-at-law, and if the rule of law alluded to, operated to avoid the limitation over to all intents and purposes, the power of devising to a widow, during her widowhood, with a devise over in favor of the children or next of kin

of the testator, would be measurably, if not entirely taken away.

That a will is not void because it does not always dispose of the property devised, as it purports to do, is shown in the case of *Burr & McElfresh vs. Schley*, 2 *Gill*, 181. There the alternative of election was imposed by a will, which purported to devise after acquired lands, because it showed the intention of the testator to make such a disposition, and although the will was inoperative *"per se,"* yet the devisees were required to elect to take what was devised to them, and relinquish all claim to the after acquired lands, or, if they claimed those lands as heirs, to relinquish their rights as devisees.

The intention of the testator, although not legally effective, as a testamentary disposition, thus controlled the ultimate division of his estate.

Here the intention of the testator in favor of the substituted devisee, converts a devise which would otherwise have been deemed contrary to public policy, into a contingent devise favored by law.

The appellant's last proposition is, that she is at least entitled to dower in the lands of which her husband died seized, on the ground that "the appellee having elected to proceed in equity will be compelled to do equity."

This supposes there is a conflict between law and equity in supporting devises *"durante viduitate."* If the policy of the law sanctions devises over, in the event of a second marriage by the devisee, there can be nothing inequitable in the prosecution of the rights of the ulterior devisee, at law or in equity.

Under our testamentary system, every devise (unless in effect nothing shall pass by such devise,) is construed as intended in bar of dower, and operates as such, if the devisee within the time specified by law, does not renounce all benefit under the will.

In the present case, five years elapsed between the death of the testator and the second marriage of his widow. No renunciation is set up or relied on, all the circumstances conflict with the presumption of its existence. She claimed the fee-simple under the will, insisting the conditions of the devise were void.

Having made her election and enjoyed the benefit of the testator's bounty, she cannot now claim in opposition to the will, "*qui sentit commodum debet sentire et onus.*"

*Decree affirmed.    Costs to be paid out of the estate.*

(Decided February 15th, 1867.)