ANNIE WALLINGFORD PERIN ET AL.

*vs.*

ELLA K. PERIN ET AL.

---

MARIE LOUISE WHITRIDGE ET AL.

*vs.*

SAFE DEPOSIT & TRUST COMPANY, TRUSTEE, ET AL.

---

OLIVER PERIN ET AL.

*vs.*

ELLA K. PERIN ET AL.

*Construction of Will—Life Estate to Widow—Remarriage—*
*Remainder to Life Tenant—Power of Disposition—*
*Advancements—Prior Absolute Gift—Sub-*
*sequent Direction for Trust.*

Where testator gave his property to his widow, naming her, "for life," such life estate to "continue during her widowhood, and should she marry," such life estate to terminate, and then directed that his property be "divided equally among" his surviving children and his widow, *held* that the latter clause, giving a remainder to the widow and the children in equal shares, applied whether the life estate ended by the widow's remarriage, or by her death without having remarried.  p. 292

A construction leading to an intestacy in a certain contingency is to be avoided.  p. 292

One may, in creating a remainder upon a life estate, name the life tenant as one of the remaindermen.  pp. 292, 293

A devise to a widow so long as she remains unmarried, with a limitation over in case of her remarriage, but without any reference to her death, vests in her a life estate, subject to be defeated by her marriage, and the remainders take effect upon the termination of the life estate by marriage or death.  p. 293

When an estate is given to a widow during widowhood, with a limitation over upon her death, the remainder takes effect upon the termination of her estate by remarriage.      p. 293

A power given to testator's widow to sell and dispose of his property, in which she was given a life estate, did not author- ize her to make such a disposition as would destroy the equal distribution of the estate in remainder between the widow and the children, elsewhere directed in the will.      p. 295

Where testator, after giving a life estate in his property to his wife, with remainder to her and her surviving children in equal shares, stated that he made the bequest to his wife "in full confidence that she will from time to time, as she deems proper, make such advancements unto my children as may be required, either out of the principal or income of my said estate," *held* that the widow was authorized, out of the principal of the estate, to make advancements directly to the children, without the intervention of a trustee, although testator had previously directed that the children's shares be held in trust for them during their lives, and paid at their deaths to their children.

     pp. 295-297

In a provision that a trustee named should hold the por- tions of testator's daughters during their lives and after their deaths pay the same to "their children or heirs at law," *held* that the quoted words referred to the daughters' children or descendants, testator having in a previous clause provided that, in the case of a child dying before the vesting of a remainder after his wife's life estate, the child's share should go to his or her "children or descendants."      pp. 299-301

Where a will contains an absolute gift to testator's widow and children, but superadds a direction that the daughters' shares shall be held in trust for their lives, and after their deaths paid over to their children, the share of a daughter who dies without children belongs to her estate, the prior abso- lute gift being superseded by the subsequent direction only in case the daughter has children.      pp. 297-298

Where a will contains an absolute gift to testator's widow and children, but superadds a direction that the daughters' shares shall be held in trust for their lives and after their

deaths paid over to their children or descendants, the share of a daughter who dies without children or descendants passes to her heirs, executors, administrators and assigns.    pp. 300-301

*Decided June 29th, 1921.*

Appeals from the Circuit Court of Baltimore City (HEUISLER, J.).

Bill by Ella K. Perin, Marie Louise Whitridge, and husband, and Lawrence Perin, Jr., against the Safe Deposit & Trust Company of Baltimore, Trustee, Oliver Perin and wife, Nelson Perin and wife, Bradford Perin and wife, Gladys Perin Harrison, Annie Wallingford Perin and Carnelia Anderson Perin, the two latter being infants. From the decree rendered, appeals were taken by the infant defendants, by Marie Louise Whitridge and husband and Lawrence Perin, Jr., and by the adult defendants. Affirmed in part and reversed in part.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Arthur W. Machen, Jr.,* and *Raymond S. Williams,* with whom were *Hershey, Machen, Donaldson & Williams* on the brief, for the plaintiffs.

*Charles McHenry Howard,* for the infant defendants.

*Roger B. Williams,* submitting on brief, for the adult defendants.

THOMAS, J., delivered the opinion of the Court.

The appeals in this case are from a decree of the Circuit Court of Baltimore City construing the will of Nelson Perin, deceased.

Mr. Perin, who was a resident of Baltimore City, died in 1904 leaving a large estate, and leaving surviving him his wife, Mrs. Ella K. Perin, and the following children: Laurence Perin, who was born in 1878; Oliver Perin, who

was born in 1881; Nelson E. Perin, who was born in 1883; Marie Louise Perin (now Mrs. Whitridge), who was born in 1886; Bradford Perin, who was born in 1888, and Gladys Perin (now Mrs. Harrison), who was born in 1889.

Mrs. Perin and all of the children are still living, with the exception of Laurence Perin, who died in June, 1917, leaving a son, Laurence Perin, Jr., who was born in April, 1906. All of the other children married, but none of them have any children with the exception of Nelson E. Perin, who has two minor children, Anne Wallingford Perin and Carnelia Anderson Perin.

Mr. Perin's will is as follows:

"I, Nelson Perin, of the City of Baltimore, in the State of Maryland, do make, publish and declare this my last will and testament in form and manner as follows:

"First—I desire all my debts shall be paid by my executrix hereinafter named.

"Second—I give, devise and bequeath all my estate and property, real, personal and mixed, wheresoever the same may be and wheresoever situate, unto my wife, Ella K. Perin, for life. I hereby give unto her power to sell or dispose of any of the realty or personalty of my estate at such times and in manner as she may deem proper, the purchasers thereof not to be responsible for the application of the purchase money.

"Third—The life estate of my said wife shall continue during her widowhood, and should she marry, then said life estate shall terminate. It is my will and I so devise that my said estate shall be divided equally among my surviving children and said Ella K. Perin. The children or descendants of any child shall be considered as taking its or their parent's share; said children's portion of my said estate shall be held in trust for said children by the Safe Deposit and Trust Company of Baltimore, upon trust that

it shall pay unto my sons when they reach the age of twenty-five such child's share.

"Said trustees shall hold my daughters' portion of my said estate during the life of my said daughters, and after their death to pay the same unto their children or heirs at law.

"In making this bequest unto my wife, I do so with full confidence that she will from time to time, as she deems proper, make such advancements unto my children as may be required, either out of the principal or income of my said estate.

"Fourth—I hereby constitute my wife, Ella K. Perin, the executrix of this my last will and testament, hereby revoking all other wills and codicils by me heretofore made; and it's my will that my said executrix shall not be required to give any bond for the administration of my said estate, except the nominal bond which may be required for taxes and administration expenses."

Mrs. Perin, who qualified as executrix and assumed the administration of the estate, acting under the power given her in the will, has from time to time made advances to the testator's children out of the principal of his estate, and at the time of the institution of the proceedings in this case the amounts so advanced to each were as follows: Laurence Perin, $420,216.82; Oliver Perin, $116,500.00; Nelson E. Perin $109,064.05; Mrs. Whitridge, $20,000.00; Bradford Perin, $13,950.00; Mrs. Harrison, $1,854.10.

Laurence Perin consumed or lost the amount so advanced to him, which about exhausted his prospective share, and died in 1917, leaving no estate, so that his infant son, who is now fifteen years of age and resides with his aunt, Mrs. Whitridge, in Baltimore City, will be left without any share of his grandfather's estate unless some adequate provision can be made for him out of the shares of the widow or other children of the testator. His grandmother, Mrs. Perin, and his aunt, Mrs. Whitridge, are anxious to make such provision,

and it is with that view that the bill in this case was filed by Mrs. Perin, Mrs. Whitridge and her husband, and Laurence Perin, Jr., by his next friend, against all the other parties interested in the estate for the purpose of having the will construed and their respective rights determined. All of the defendants answered consenting to the determination of the questions submitted, and upon the petition of the plaintiffs special counsel was appointed by the court to represent the infant defendants, the two children of Nelson E. Perin.

In the bill Mrs. Perin charges that by the true construction of the will "upon the expiration of her estate for life or during widowhood, whether such expiration be caused by her death or remarriage," she "is entitled to a remainder in fee or absolutely in an undivided share equal to the portion of any child of the testator," and that if she should die her said share would pass to her heirs, executors or administrators, and that she is entitled to dispose of the same by deed or will, but that she is advised "that the defendants are interested to deny her title to said right of disposition as to said property," and that it had been suggested to her that the provision of the will giving her an estate in remainder "should be construed as applicable only in contingency of her remarriage and as having no operation or effect in the event of her death without remarriage." After referring to the clause giving Mrs. Perin power to make advances to the children out of the principal of the estate, to the fact that she had under that clause made advances to the children, and to Laurence Perin the whole principal of his share, that he had by unfortunate investments lost the amount so advanced to him and had died leaving no estate, "and without issue except the said Laurence Perin, Jr.," the bill further alleges that Mrs. Perin, "pursuant to the power and authority vested in her * * * deems it proper to make a further advancement or advancements to her daughter," Mrs. Whitridge, "out of the corpus or principal of her expectant share in the estate," to be held by her "absolutely, free, clear, and discharged of any trust, to be

disposed of as she may deem best"; that she deems it proper
that such advancements to Mrs. Whitridge should amount in
the aggregate to a large part or the whole of her expectant
share, and was advised that she has the right and power to
make such "advancements," but that she was also advised
"that the defendants are interested to deny the same." The
sixth paragraph of the bill is as follows:

"The complainants are advised that doubts exist as
to the proper construction of the will of said Nelson
Perin, deceased, with respect to the devolution of the
shares of his daughters, namely, your oratrix, Marie
Louise Whitridge, and the defendant, Gladys Perin
Harrison. According to one construction, the plain-
tiffs are advised, the provision in said will by which
the respective shares of said daughters are directed to
be held in trust is applicable only in the event of the
remarriage of the testator's widow, the plaintiff, Ella
K. Perin, so that if said Ella K. Perin should die with-
out marrying again the shares of her said daughters
will vest in them absolutely, or in fee simple, free
and clear of trust. Your oratrix, Marie Louise Whit-
ridge, charges that such is the proper construction of
said will; but if such is not the proper construction,
your said oratrix is advised that there are further
doubts as to the devolution of the shares of herself
and her sister in said estate. Upon the assumption
that the provision creating a trust becomes applicable
upon the expiration of the estate of said Ella K. Perin
by her death, as well as by her remarriage, there is a
doubt as to the nature of the estate limited in remain-
der upon the expiration of the equitable life estate of
your oratrix, Marie Louise Whitridge. The trust
upon the death of the testator's daughters is expressed
to be 'to pay the same unto their children or heirs at
law.' Your oratrix, Marie Louise Whitridge, is ad-
vised that a doubt exists as to the true construction
of said words 'children or heirs at law.' On the one
hand, the words 'children' and 'heirs at law' may be
regarded as synonymous and as equivalent to 'chil-

dren.' According to this construction, there would be no special limitation for the event of your said oratrix's death without issue, leaving her share in that contingency to pass to her heirs, next of kin, devisees or legatees. On the other hand, the words 'children' and 'heirs at law' may be regarded as synonymous and equivalent to 'heirs.' According to this construction, the plaintiffs are advised that the equitable remainder to your said oratrix's 'heirs' would be converted into an estate in your oratrix by the operation of the Rule in Shelley's Case. By still another construction the gift to the 'heirs at law' may be construed as substitutional for the gift to the 'children,' the will being construed to mean that the trustees upon your oratrix's death shall pay the corpus of her share to her children, if any, and, in default of children, to her 'heirs at law.' Even according to this construction your oratrix is advised that under the said Rule in Shelley's Case the contingent equitable limitation to her heirs at law should be treated as an estate in your oratrix, the words 'heirs a law' being construed as words of limitation rather than purchase. Even if the words 'heirs at law' should be construed as substitutional for the words 'children' and as words of purchase, nevertheless, the plaintiffs are advised that your oratrix, Marie Louise Whitridge, by adopting your orator, Laurence Perin, Jr., infant, pursuant to sections 71-76, inclusive, of article 16 of the Annotated Code of Public Civil Laws of Maryland, would have the right to make him her 'heir at law,' so that in the event of her death without issue, he would succeed to the share of your said oratrix in the estate of her father, but your said oratrix and your said orator, Laurence Perin, Jr., are advised that the defendants are interested to deny this right of your said oratrix by adopting your said orator, Laurence Perin, Jr., to invest him with the right of succession to your said oratrix's share of her father's estate. The said infant plaintiff, Laurence

> Perin, Jr., has heretofore been adopted by your ora-
> trix, Ella K. Perin, pursuant to sections heretofore
> mentioned of article 16 of the Code of Public yeneral
> laws of Maryland; but your said oratrix, Ella K.
> Perin, is willing that such adoption be set aside, and
> that said infant plaintiff be adopted by your oratrix,
> Marie Louise Whitridge, and her husband, provided
> said child, if so adopted, would be entitled to succeed
> to the share of said Marie Louise Whitridge in her
> father's estate in the event of her death without issue."

The bill prayed that the court decree as follows: (1)
That by the true construction of the will Mrs. Perin, the
widow, is entitled absolutely to a part or share of the estate,
"whether she should re-marry or whether she dies without re-
marrying." (2) That Mrs. Perin is entitled to make such
"advancements" as she deems proper to Mrs. Whitridge "up
to the total amount of the principal" of her share of the es-
tate, and that Mrs. Whitridge is entitled to receive such "ad-
vancements" to be held by her absolutely and free from any
trust. (3) That no provision is made in the will "for set-
tling in trust" the shares the daughters of the testator in the
event of the termination of the particular estate of the widow
by her death without having married again, and that Mrs.
Whitridge is entitled to a remainder in fee simple in a share
of the estate subject to the termination of the estate of the
widow by her death without having married again. (4) That
the share of Mrs. Whitridge is, at least in the event of her
death without issue, subject to her disposition by will, and in
the event of the death of Mrs. Perin without having re-
married, the share of Mrs. Whitridge is to be held absolutely
free of the trust, and (5) that Mrs. Whitridge is entitled to
adopt Laurence Perin, Jr., under the statutes of this State in
such manner that he, as her adopted child, would in the event
of her death without issue "succeed as her heir at law" to that
part of her share of the estate directed to be held in trust for
her during her life.

Upon the pleadings and evidence in the case the court below passed the following decree:

"(1) That by the true construction of the last will and testament of Nelson Perin, late of Baltimore City, deceased, a copy whereof is filed in these proceedings, the clause thereof directing that the said testator's estate shall be equally divided among his surviving children and the plaintiff, Ella K. Perin, the children or descendants of any deceased child taking its or their parents' share, is applicable both in the case of the death of said Ella K. Perin without having remarried and in the case of her remarriage, and that upon the death of said Ella K. Perin without having remarried, a share in said estate equal to a child's portion will pass to the heirs, executors, administrators and assigns of said Ella K. Perin absolutely and in fee simple, and that therefore she now has the right to alien or assign the same by deed or will.

"(2) That by the true construction of the said will of Nelson Perin, deceased, the phrase 'children or heirs at law' in paragraph 'third' of said will means 'children who are heirs at law,' and does not include heirs who are not children, and that there is no provision made in said paragraph of said will for the disposition of the share of a daughter of the testator in the contingency of her surviving the death or remarriage of her mother and subsequently dying without children; and that in that event the prior absolute gift contained in paragraph 'second' of said will, whereby her share of said estate, upon her surviving the death or remarriage of her mother, is devised and bequeathed to her absolutely or in fee simple, will take effect, and in that event the corpus or principal of her share of the estate will pass to her heirs, executors, administrators and assigns, and that therefore she now has the right to alien or assign the same.

"(3) That by the true construction of the said will of Nelson Perin, deceased, the said Ella K. Perin,

    so long as she shall remain unmarried, is empowered
    to make advancements to any of the children of said
    Nelson Perin, deceased, daughters as well as sons, out
    of the corpus or principal of the estate, not exceeding
    the amount of his or her expectant share of said estate,
    to be held absolutely or in fee simple by the testator's
    son or daughter to whom the same shall be made."

From the foregoing decree three appeals have been brought
to this Court: one on behalf of the infant children of Nelson
E. Perin, one by the other defendants in the case, and one by
Mrs. Whitridge and her husband and Laurence Perin, Jr.

The case has been presented by counsel representing the
several interests with clearness and ability, and the various
constructions suggested have been fully and ably argued.
While the will is inartificially drawn, its one prominent and
unmistakable feature is the expression by the testator of his
utmost confidence in the ability and integrity of his wife.
He not only gives her his entire estate during her life or
widowhood, but also full power to sell or dispose of any part
of it at such times and in such manner as she may deem
proper, and to make from time to time such advances to his
children, out of the income or principal of his estate, as she
may deem proper. He appoints her executrix, and as far as
it was in his power to do so relieves her of the necessity of
giving an administration bond.

(1) After providing in the first paragraph for the payment
of his debts by his executrix, the testator in the second para-
graph of the will gives all his propery and estate to his wife,
Ella K. Perin, for life, with unlimited power to sell and dis-
pose of the same, as we have stated. The third paragraph
provides: "The life-estate of my said wife shall continue dur-
ing her widowhood, and should she marry, then said life-
estate shall terminate. It is my will and I so devise that my
said estate shall be divided equally among my surviving chil-
dren and said Ella K. Perin. The children or descendants
of any child shall be considered as taking its or their parent's

share." Mrs. Perin contends that the devise to her and the children of equal shares of the estate in remainder is applicable to the termination of her life estate either by her remarriage or death without having remarried, while it is urged on behalf of the defendants that the limitation to her in remainder is only in the event of her remarriage. The court below adopted the contention of Mrs. Perin, and we think that view is in accordance with the true construction of the will. There is only one devise or bequest in remainder, and that is contained in the sentence, "It is my will and I so devise that my said estate shall be divided equally among my surviving children and said Ella K. Perin," which by its terms is just as applicable to the termination of Mrs. Perin's life estate by her death as by her remarriage, and if the bequest in remainder should be regarded as applying only in the case of her remarriage, it would result in intestacy in the event of her death without having remarried. A construction leading to that result should, if possible, be avoided. *Albert* v. *Safe Dep. & T. Co.,* 132 Md. 104.

The suggestion that the testator could not have intended to give his wife an estate expectant upon her death is not sufficient to justify a construction that would not only result in intestacy but would necessitate reading into the will a condition not expressed. In the case of *Robinson* v. *Mitchell,* 99 Md. 50, where a farm was given to the son of the testatrix for life, and the will further provided that after his death the farm should be "equally divided amongst my said six children," in answer to the argument that the testator could not have intended to give the life tenant a share in the farm after his death, the present chief judge of this Court said: "Nor would the fact that she (testatrix) knew he would be dead when the time for the division arrived be sufficient reason to justify the court in changing the terms of the will. * * * While it may be unusual, it is by no means unheard of for a testator to devise a life estate and leave the remainder to a class that would include the life tenant." And in the

case of *Bullock* v. *Downes,* 9 H. L. Cas. 12, LORD CAMPBELL said: "Gifts to a class following a bequest of the same property for life vest immediately upon the death of the testator. Nor does it make any difference that the person to whom such previous life interest was given is also a member of the class to take on his death." See also *Ware* v. *Rowland,* 2 Phillips Ch. 635, and authorities cited by the court in *Robinson* v. *Mitchell, supra.*

The devise in remainder is not expressly confined to the contingency of Mrs Perin's remarriage, but even if it had been it may now be regarded as settled in this State that a devise to a widow so long as she remains unmarried, with a limitation over in case of her remarriage, but without any reference to her death, vests in her a life estate, subject to be defeated by her marriage, and that the remainders take effect upon the termination of the life estate by marriage or death. *Maddox* v. *Yoe,* 121 Md. 288; *Ijams* v. *Schapiro,* 138 Md. 16. Upon the same principle it is held that, where an estate is given to a widow during her widowhood, with a limitation over upon her death, the remainder will take effect upon the termination of her estate by remarriage. *Clark* v. *Tennison,* 33 Md. 85; *Boyd* v. *Sachs,* 78 Md. 491; *Davis* v. *Hilliard,* 129 Md. 348.

In this case the estate given to the widow for life is by the third paragraph of the will reduced to an estate *durante viduitate,* and it is not stated in the will whether the limitation over is to be upon her marriage or death, and if, as shown by the cases referred to, a remainder expressly limited to take effect on Mrs. Perin's remarriage would be held also applicable in case of her death without having remarried, there is no reason why a remainder which in terms is applicable to the termination of the life estate in any way should be confined by mere conjecture to its termination in any particular way.

Counsel for the infant defendants call attention to the result of the English cases as summed up by Mr. Jarman [1

*Jarman on Wills* (6th Ed.), star p. 760] : "On the whole, then, the distinction would seem to be, that where the circumstance of not marrying again is interwoven into the original gift, the testator having thus, in the first instance, created an estate *durante viduitate,* must generally be considered, when he subsequently refers to the marriage, to describe the determination *by any means* of that estate, and, consequently, the gift over is a vested remainder expectant thereon. On the other hand, where a testator first gives an absolute estate for life, and then engrafts thereon a devise over to take effect on the marriage of such devisee for life, the conclusion is, that the devise over is not to take effect unless the contingency happens." In the case at bar the devise over is not expressed to take effect upon the remarriage of the devisee for life, but, if we were to apply to the will here the English rule stated by Mr. Jarman to be applicable to the second case referred to by him, the remainders to the testator's children and Mrs. Perin would not take effect at all unless Mrs. Perin married again, which would be clearly contrary to the testator's intention.

It is also suggested on behalf of the infant defendants that the testator intended the children to take upon either the remarriage or death of Mrs. Perin without having remarried, but intended her to take a share in remainder only in the event of her remarriage. The only devise in remainder, however, is the one contained in the sentence we have quoted, and it cannot, as suggested by counsel for the appellees, be so split up as to make two distinct devises. To do so would require us to write into the will conditions not warranted by any expressed desire or intention of the testator.

Our conclusion on this branch of the case is that the testator intended Mrs. Perin to have his entire estate so long as she remains his widow, and a vested remainder in a share of his estate equal to the shares of his children.

(2) As we have said, the will give Mrs. Perin a life estate, with unlimited power to sell and dispose of the estate at such times and in such manner as she deems proper; and after providing for remainders to her and her surviving children of equal shares in the estate (the children or descendants of a deceased child to take its or their parent's share), and directing that the shares of his sons should be held in trust until they arrive at the age of twenty-five years, and the shares of his daughters should be held in trust during their lives, and paid at their deaths to "their children or heirs at law," the testator says, in a separate clause of the will, "In making this bequest unto my wife, I do so with full confidence that she will from time to time, as she deems proper, make such advancements unto my children as may be required, either out of the principal or income of my said estate." The power to sell and dispose of his estate (which should not, of course, be construed as to authorize Mrs. Perin to make such disposition of the property as would destroy the equal distribution of the estate in remainder; *Bachtell* v. *Bachtell,* 135 Md. 474), when coupled with the power (so expressed as to amount almost to a *direction*) to make such advancements to his children out of the principal of the estate as she may deem proper, gives Mrs. Perin, in reference to the *equal* shares of his children, almost the same power that the testator could have exercised in regard to them, and is expressive of his confidence in her discretion and integrity. At the date of his will and at the time of his death the testator's children were all young, and in order to protect them he directed that the shares of his sons should be held in trust until they reached the age of twenty-five years and the shares of his daughters to be so held during their lives, but he gave his wife authority to make advancements to his sons and daughters in the same terms out of the *principal* of the estate. If the testator intended the advancements to his daughters to be paid to the trustee, and that they should receive only the income, what purpose could he have had in author-

izing his wife to make advancements to them out of either
the interest or *principal* of the estate? In *Clark* v. *Wilson,*
27 Md. 700, the Court said: "An advancement is a giving
by anticipation the whole or a part of what it is supposed a
child will be entitled to on the death of the parent making it
and dying intestate," and in the case of *Franke* v. *Auerbach,*
72 Md. 580, the Court said: "When the testator gave his wife
power to advance any of the children, he clearly meant to
authorize her to give, by way of advancement in her life-
time, such part, or portion of such part, as she designed to
give them or any of them. The words 'advance' and 'ad-
vancement' when used in such connection have a well-defined
and technical meaning." After referring to the language of
the court in *Clark* v. *Wilson, supra,* which we have just
quoted, the Court said further: "The provision is unmean-
ing and senseless, unless the power to advance was intended
to enable the wife to give by way of anticipation and before
her death, the whole or a part of what would be the child's
at her death. He is presumed to know the meaning of the
language he uses." It is true, in *Franke's Case* the testator
gave his wife power to dispose of his estate to his children by
her will, but he also provided that in case she died without
having made a will his estate, after her death, should be "di-
vided equally among my children then living and their chil-
dren *in loco parentis,*" and the quotation we have made from
the opinion of the Court had reference to the express power
given her to make advancements to the children. See also
*Wood* v. *Robertson,* 113 Ind. 323, where advancements made
by a life tenant under power given in the will to children
were held good against the descendants of the children to
whom the advances were made. The suggestion that an ad-
vancement directly to a daughter, instead of to her trustee,
will defeat the limitation after her death to her "children or
heirs at law," is, in our judgment, sufficiently met by the
view that the chief concern of the testator was proper pro-
vision for his wife and children, and the benefit of the ex-

press power conferred upon his wife should not, in the absence of any express restriction upon that power, be denied to the daughters in order to preserve their shares for those more remotely interested. We concur in the view of the court below that Mrs. Perin is authorized by the will to make such advancements as she deems proper, out of the principal of the estate, to the testator's children, of a part or the whole of their share, and that the advancements so made to the daughters or sons will be held by them absolutely.

(3) The learned court below took the view that in the limitation over upon the death of the daughters to "their children or heirs at law," the terms "their children or heirs at law" meant "children who are heirs at law," and that in the event of a daughter dying without leaving such children, the prior absolute gift to her, in case she survives the remarriage or death of Mrs. Perin, will take effect, and the corpus of her share will pass to her heirs, executors, administrators and assigns, "and that therefore she now has the right to alien or assign the same."

Assuming that the words "their children or heirs at law" mean "children who are heirs at law," we think that the conclusion of the court below is in accordance with the proper construction of the will in question and supported by abundant authority. The testator gives to his wife and surviving children equal shares of his estate, and then by a separate sentence in the same paragraph of his will directs that his daughters' shares shall be held in trust during their lives, and after their death paid over to "their children or heirs at law" (children who are heirs at law), with no provision for the case of a daughter dying without leaving such children, &c. The rule applicable in such cases is stated by LORD DAVEY in *Hancock* v. *Watson* (1902), A. C. 22, as follows: "It is settled law that if you find an absolute gift to a legatee in the first instance, and trusts are engrafted or imposed on that absolute interest which fail, either from lapse or invalidity or any other reason, then the absolute gift takes effect so far as

the trusts have failed, to the exclusion of the residuary legatee or next of kin as the case may be." The case of *Whittell* v. *Dudin,* 2 Jac. & W. 279, which was decided in the time of LORD ELDON, is like the case at bar. There the testator gave the residue of the estate to be equally divided between his wife, sons and daughters, subject to a further provision, in a subsequent part of the same section, that the daughters' shares should be held by trustees and the income paid to them during their lives, and upon the death of a daughter her share was to go to her child or children, but no provision was made for the case of a daughter dying without issue, and that event having happened, the court held that the prior gift to the daughter took effect, the Master of the Rolls saying: "I think that this is the case of a parent professing in the first part of the sentence, to treat all his children equally with respect to the residue, and that the subsequent part is not inconsistent with that design, but is only a cautionary provision, to preserve the benefit of the bequest to the daughters and their children." The rule has been recognized and applied by this court in *Dulany* v. *Middleton,* 72 Md. 67, and *Graham* v. *Whitridge,* 99 Md. 248, dealing with perpetuities, and in the latter case CHIEF JUDGE McSHERRY quotes from 1 *Jarman on Wills,* 295, the statement: "And this rejection of disqualifying clauses, ineffectually attempted to be engrafted on a previous absolute gift, equally obtains where the whole is contained in the same testamentary paper, and in spite, too, of the principle hereafter discussed, which prefers the posterior of two inconsistent clauses, it being considered (for this is the ground upon which alone the construction can be defended), that the testator intends the prior absolute gift to prevail, except so far only as it is effectually superseded by the subsequent qualified one."

But can the words "their children or heirs at law," in the will before us, be held to mean the "children who are heirs at law" of the testator's daughters? In the case of *Plummer* v. *Shepherd,* 94 Md. 466, JUDGE FOWLER said: "The word

'heirs' as used in this clause does not necessarily bear its technical meaning, but it may here, as is frequently done, be construed as meaning 'children.' " See also *Albert* v. *Albert,* 68 Md. 352; *Crawford* v. *Trotter,* 4 Madd. 361. And in the case of *Reilly* v. *Bristow,* 105 Md. 326, the Court, in order to rescue the gift from the application of the Rule in Shelley's Case, held that a bequest to "the children the lawful heirs" of the testator's children should be construed as a bequest to the *children* of the testator's children, JUDGE PEARCE saying: "Where, as here, there are two possible constructions, one of which would enlarge and the other would restrict the meaning of the word *children,* we think the spirit of our decisions requires us to adopt the restrictive construction, which will give effect to the natural and primary meaning of the word, rather than to the arbitrary meaning placed upon it by an artificial rule of law." But in the case at bar there is no such urgent reason for confining the limitation over after the death of the testator's daughters to their children. In the case of *Hall* v. *Gradwohl,* 113 Md. 293, the testator gave his wife all his property during her life, and provided that at her death it should be disposed of as follows: "Five hundred dollars and my piano to my daughter Mena Weitzler; five hundred dollars to my daughter Henrietta Weitzler, the balance of my estate to be equally divided among my five children or their heirs, share and share alike, with this proviso: That the portion to which my daughter Sarah Gradwohl may be entitled shall be invested in some safe stocks or other securities, the said Sarah Gradwehl to receive the income from the same during the term of her natural life, and at her death to be equally divided among her children or legal heirs." After referring, among others, to the case of *Fulton* v. *Harman,* 44 Md. 264, JUDGE BURKE said: "Applying these principles (the principles announced in the cases referred to by him) to the will before us, it is manifest that the application of the Rule in Shelley's Case to the bequest to Sarah Gradwohl would wholly defeat the expressed will of the testator.

If that rule be applicable to the bequest to her, the words 'children or legal heirs' must be treated as words of limitation, that is to say, as words marking out the extent and duration of her interest  By that construction her 'children or legal heirs' would take nothing under the will, and the whole portion which the testator intended his daughter to take for life would be taken by her absolutely.  Such a construction, which has neither reason, policy, justice, nor equity to support it, can only be sustained by giving the words 'legal heirs,' which are superadded to the word children, the arbitrary meaning placed upon them 'by an artificial rule of law.'  We think it plain from the language and dispositions of the will that the testator did not intend to use the words 'legal heirs' in their full technical sense and that the language and provisions of the will plainly manifest a particular intent to use those words, in the bequest to his daughter Sarah, as mere *descriptio personarum,* or a particular designation of individuals who were to take as purchasers at her death."  See also *Holmes* v. *Mackenzie,* 118 Md. 210; *Williams* v. *Armiger,* 129 Md. 222; *Vogt* v. *Graff,* 222 U. S. 404.  The rule stated in *Hall* v. *Gradwohl, supra,* and followed in the cases we have cited, applies with equal force to the will we are now construing, and the words "heirs at law" in the limitation after the death of the daughters cannot be treated as words of limitation, marking the extent of the daughters' interests, but as descriptive merely of the persons to take as *purchasers.*

In determining who are included in the description of the persons to take as purchasers the remainders after the deaths of the daughters, we must look to the will in order to ascertain the intention of the testator.  In the same paragraph of the will, the testator, in providing for the case of a child dying before the vesting of the remainder after the termination of his wife's life estate, directed that the share of such child should go to his or her "children or descendants," and he intended, we think, to make a similar disposition of the

daughters' shares after the termination of their life estates. He did not intend to restrict the remainder to their *children,* or to include their collateral heirs, but intended to give the remainder to the daughters' "children or descendants." By this construction we give effect to both of the terms used by the testator as descriptive of the persons he intended to take the shares of his daughters as *purchasers.* In the case of *Sheeley* v. *Neidhammer,* 182 Pa. St. 163, where the devise was to the "children or legal heirs" of the testator's son, the court said: "The words are to 'his children or legal heirs.' The words 'legal heirs' are in this connection equivalent to descendants, and the entire phrase has the force of the word 'issue.'"

It follows from what has been said that the words "children or heirs at law" in the limitation over upon the death of a daughter, should be construed to mean "children or descendants," and that upon the death of a daughter without leaving a child or children or descendants the prior absolute gift to such daughter will take effect, as stated in the second paragraph of the decree appealed from.

As we hold the words "children and heirs at law" in the limitation over after the death of a daughter to mean the *children or descendants* of such daughter, the second paragraph of the decree of the court below should be modified to that extent, and to that end the cause will be remanded.

> *Decree affirmed in part and reversed in part, and cause remanded in order that the decree of the court below may be modified in accordance with the opinion of this Court, the costs in this Court to be paid out of the estate, and the costs in the court below to be paid as provided by its decree.*